## Childs & Co. *versus* Digby.

24    23
e39SC 222

1. Process in foreign attachment is not merely a proceeding *in rem;* but it is also a proceeding against the garnishee personally.

2. All that is requisite to sustain proceedings in foreign attachment against a garnishee is that *he* be within the jurisdiction of the Court when the writ was served, and that the property attached be in the possession of himself or agent, though the goods be within a foreign jurisdiction at the time the writ was issued.

3. A proceeding in foreign attachment against a garnishee was maintainable though at the time of the issuing and service of the writ the goods in question were *in Ohio,* in the possession of an agent of the garnishee.

4. A stranger has no right to object that an agent has exceeded his authority.

5. An agent left in charge of goods cannot execute a mortgage or bill of sale of them without authority from the principal; but a subsequent ratification of such act by the principal cannot divest an interest in the goods acquired by another person previous to the ratification.

6. If it be not apparent that an answer as prayed for would have benefited the party submitting it, a neglect or refusal to answer it is not assignable as error.

ERROR to the District Court of *Allegheny county.*

This was a *scire facias* against William Digby, garnishee of Thomas Scandrett, in an action of foreign attachment, instituted in the District Court of Allegheny county, January Term, 1852, by the plaintiffs, H. Childs & Co., against the said Thomas Scandrett, a non-resident of Pennsylvania. The writ of foreign attachment was issued on the 17th of December, 1851, and was executed by serving a copy thereof on William Digby, the defendant, on December 18, 1851, and summoning him as garnishee.

On the 12th August, 1852, a judgment, in favor of Childs & Co., was obtained against Scandrett, for default of appearance, and the sum due was liquidated at $620.93. After the entry of the judgment the plaintiffs sued out the writ of *scire facias* in this case, against Digby, the garnishee, and exhibited interrogatories to him in writing, touching the estate and effects of the defendant Scandrett, in his possession or charge, at the time of service of

[Childs & Co. *v.* Digby.]

said writ and subsequent thereto. The answers of the defendants, and the other evidence in the case exhibited the following state of facts:—

Thomas Scandrett, the defendant, had been for about two years prior to November, 1851, engaged in carrying on a clothing store, in Youngstown, in the state of Ohio. On the 21st November, 1851, he was indebted to Digby, in $2175.81, for goods sold and consigned to him, by Digby, at different times between the 1st October, 1849, and the 2d day of July, 1851, under and by virtue of an article of agreement between the parties, dated 27th September, 1849. On the 14th of July, 1851, Scandrett left Youngstown, for Lake Superior, on a trading expedition, intending to return in a few months; and he left his store in charge of his cutter and salesman, Goodman, and requested George McKee to superintend his business in his absence. At the time Scandrett left, the stock of goods remaining in his store was worth about $3000. Some time after his departure, Goodman, his cutter and salesman, left the store, and the business was then managed by McKee, who made sale of some of the goods, and otherwise disposed of a portion in payment of some small debts of Scandrett.

On the 21st November, 1851, Digby obtained from McKee a bill of goods, amounting to $784.16, pursuant to the aforesaid article of agreement, in part payment of Digby's claim against Scandrett. At the same time Digby procured from McKee a mortgage or bill of sale for the *residue of the stock on hand*, amounting to $689.26. In this bill of sale Digby was authorized to take possession of the goods upon the mortgagors failing to pay said $689.26 *within one month*. On the same day Digby took possession of the goods, and left them in charge of an agent, at Youngstown, Ohio, who before the expiration of the 30 days, removed the goods to his own (the agent's) house. Part of the goods were sold in and about Youngstown by Goodman and McKee, and the residue were sent to Lake Superior, and sold by McKee and Scandrett for Digby.

McKee, at the time of executing the mortgage or bill of sale of the goods to Digby, had no authority from Scandrett to mortgage his goods or dispose of his whole stock in payment of his debts. Upon the return of Scandrett, in April, 1852 (several months after the commencement of the original suit of Child & Co., and the service of process upon Digby), he ratified the arrangement made by McKee with Digby.

On the trial, the counsel for the plaintiffs requested the Court to charge the jury:

1st. That the bill of sale from McKee to Digby, in the absence of and without express authority from Scandrett, did not pass to Digby the title to that part of the goods valued at $689.26.

2d. That if the jury should find that Scandrett did not ratify

[Childs & Co. *v.* Digby.]

the act of McKee until after the writ in this case was served upon Digby, the garnishee, such ratification could not affect the plaintiff's claim.

3d. That foreign attachment lies whether the goods were brought within the jurisdiction of this Court or not, provided the jury find that the goods were received by Digby, the garnishee.

4th. That if Digby became an assignee in order to be perferred, he is chargeable with the goods as assignee, and other creditors are entitled to share with him.

The Court remarked, that it was only necessary to consider the *third point* presented, and held that, inasmuch as the goods delivered to Digby by McKee, in Youngstown, under and by virtue of the bill of sale or mortgage, had not been brought within the jurisdiction of the District Court, the attachment would not lie and no recovery could be had against the garnishee.

It was assigned for error,

1st. The Court erred in refusing to charge the jury as requested: and

2d. In charging the jury as they did upon the third proposition of plaintiffs.

*Shaler* and *Co.*, for the plaintiff in error.—Digby's right to take possession of such of the goods as he had sold to Scandrett was secured to him by the article of agreement, and is not called in question. But it is contended on part of plaintiffs, that Digby is chargeable with that portion of the goods which was received by him under the mortgage or bill of sale by McKee, the superintendent of the store. A clerk or agent has no authority to sell by wholesale the goods in the store in payment of a debt: 2 *Harris* 105, Hampton *v.* Matthews; 18 *Johnson* 362. The alleged ratification by Scandrett in April, 1852, about five months after the issuing and service of the attachment of the plaintiffs, cannot affect any interest acquired by them under the attachment proceeding. Under the Act of Assembly, the garnishee is required to show cause why the plaintiff should not have execution of the effects of the defendant "in his hands or possession." This does not mean an actual manual possession, but also the legal or potential custody—coextensive with the power the garnishee has over them—the jurisdiction of the Court being governed by the condition which the property occupies in relation to the parties to be affected. If the goods are susceptible of seizure, the sheriff shall seize them: if not susceptible of seizure or manual occupation, the sheriff is to give notice to the party having the custody or control of the goods, that he attaches them.

*Loomis*, contrà.—Jurisdiction to be rightfully exercised must
Vol. XII.—4

[Childs & Co. *v.* Digby.]

be founded either upon the person or thing being within the territory: *Story's Conflict of Laws*, § 539. The potential charge or control of the goods in question by Digby, while living in Pittsburgh, by his agent in Ohio, was not such a possession as rendered them liable to be attached in Pennsylvania. If *Digby* had property in the goods by virtue of the bill of sale, this would draw after it the possession; but if *he* had such title, the goods were not liable to attachment as the property of *Scandrett.* Where there has been a wrongful taking of chattels, the property in them is not changed before judgment, but remains in the rightful owner: 2 *Kent* 337-8, and notes. Possession is either actual, or that which arises constructively from title. If *Scandrett* were the owner, his property in them could not be reached by service upon Digby, who had not even the evidence of property in Scandrett.

The proceeding by foreign attachment is one *in rem*, and to enable a Court to pronounce a judgment respecting it, it must be within its territory or control: 1 *Harris* 223, Christmas *v.* Biddle. If, after the plaintiffs had attached the goods, they had been attached in Ohio at the suit of another creditor of Scandrett, would not the latter proceeding be effectual? If Scandrett had not ratified the sale of the goods, he might have maintained replevin. The plaintiffs were not without remedy, as they might have attached the goods in Ohio.

The opinion of the Court was delivered by

LEWIS, J.—The observation of Mr. Justice COULTER in Christmas *v.* Biddle, 1 *Harris* 223, that "the attachment process is a proceeding *in rem*, and the matter and thing attached must be in the power and jurisdiction of the Court," must be taken with some qualification. It is true, that "the attachment process is a proceeding *in rem;*" but it is equally true that it is something more. It is also a proceeding against the garnishee *personally*, for the purpose of compelling him to answer for the value where the thing itself is not produced. The summons, the judgment, and the execution contain the bones and sinews of a proceeding *in personam* against the garnishee, by means of which his own estate may be taken in execution if he fail to "answer interrogatories," or "to produce the goods and effects of the defendant" found to be in his hands or possession, or "neglect to pay the debt attached, if the same be due and payable." The ultimate object of the proceeding is to appropriate the debtor's assets to the payment of his debts, and this object is one which ought to be favored. It may be accomplished wherever the Courts have jurisdiction over the person who has the actual possession of the property, and the power to dispose of it according to their direction, or wherever the property itself may be taken into actual possession by the

[Childs & Co. *v.* Digby.]

officers of the law. Real estate follows the law of its *situs*, and bank stock that of its creation. Where the one is located in a foreign jurisdiction, or the other created by a foreign law, neither is the subject of attachment here, in the hands of one who has neither possession, nor title, but simply a naked power to sell: Christmas *v.* Biddle, 1 *Harris* 223. But this is not the case with ordinary goods and effects. In general, any one having possession of goods or effects may surrender them in obedience to a judgment in a foreign attachment, although they may happen to be within a foreign jurisdiction at the time the writ was issued. The possession of them gives the power of removal and surrender. While this exists in the garnishee, there is no reason why he should not be compelled to exercise it in furtherance of the object of the law, and in advancement of justice. It was thought at one time that a foreign attachment would not lie of a debt contracted out of the jurisdiction: 2 *Show.* 373; *Lord Raym.* 346. But this was afterwards denied, and it was held that the debt always follows the person of the debtor, and it is not material where it was contracted: Andrews *v.* Clerke, *Carthew* 25. In personal property, the *lex loci rei sitœ* is not to be recognised. All that is requisite to sustain the proceedings against the garnishee is, that he be within the jurisdiction of the Court when the writ is served, and that the property attached be " in his hands or possession." The Court was in error in directing the jury that the attachment would not lie for goods delivered to Digby in Ohio.

This disposes of the only point determined by the District Court; but as the cause goes back, it is proper to express our opinion on the other points. A stranger has no right to object that an agent exceeded his power: 5 *Johns.* 44. But where an agent exceeds his authority, and an interest has attached in favor of another, a subsequent ratification will not divest such interest: 5 *East* 491. Where an agent exceeds his authority, the principal is bound to disavow it the first moment the fact comes to his knowledge, or he makes the act his own: 14 *Ser. & R.* 27. The 1st, 2d, and 3d points ought to have been answered in the affirmative.

As we do not see how an affirmative answer to the 4th would have sustained the attachment, or otherwise have benefited the plaintiff, it was not error to refuse to answer it. If Digby is chargeable with the goods as assignee in trust for creditors, the present is not the form of proceeding in which that trust can be enforced.

Judgment reversed and *venire de novo* awarded.